# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | 1:16-cr-00002-LJO-SKO |
| Plaintiff-Respondent, | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (ECF No. 19)** |
| v. | |
| **LUIS LOPEZ PEREZ-CONCEPCION,** | |
| Defendant-Petitioner. | |

## I. INTRODUCTION

Petitioner Luis Lopez Perez-Concepcion, a prisoner in federal custody at Federal Correctional Institution, Victorville, brings this *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons discussed below, Petitioner's motion is **DENIED**.

## II. BACKGROUND

On January 14, 2016, Petitioner was indicted on charges of being a deported alien found in the United States, in violation of 8 U.S.C. § 1326 (a) and (b)(2). ECF No. 1. The indictment charged that Petitioner had been removed from the United States on or around December 14, 2012, after being convicted of a crime punishable by a term of imprisonment exceeding one year, specifically a California state violation for transportation of cocaine base, a controlled substance. ECF No. 1.

Petitioner consented to having a pre-plea Presentence Investigation Report ("PSR") prepared, and the U.S. Probation Office filed the PSR on March 1, 2016. ECF No. 12, PSR ¶ 1. Using the 2015 United States Sentencing Guidelines ("Guidelines"), the PSR determined that the base offense level for

a violation of 8 U.S.C. § 1326 was eight. *Id.* ¶ 7 (citing USSG § 2L1.2(a)). Because Petitioner was convicted under California state law for a drug trafficking offense for which he was sentenced to three years' probation and one day in jail, the PSR added a 12-point increase under USSG §2L1.2(b)(1)(B), which provides for an enhancement where a defendant was deported following a drug-trafficking offense where the sentence imposed was 13 months' imprisonment or less and results in criminal history points under the Guidelines. *Id.* ¶ 8. The PSR recommended a three-point reduction for acceptance of responsibility, for an adjusted offense level of 17. *Id.* ¶ 16. With a criminal history category of VI, the Guidelines provided for a sentencing range of 51 to 63 months' imprisonment, and the PSR recommended a 51-month sentence. *Id.* at 12.

On May 2, 2016, Petitioner pleaded guilty to the indictment for violating 8 U.S.C. § 1326, for illegal reentry of a deported alien, pursuant to a plea agreement. ECF Nos. 16, 17, Plea Agreement. In the plea agreement, filed on May 3, 2016, Petitioner agreed to waive the right to appeal and the right to collaterally attack his plea, conviction and sentence. Plea Agreement ¶ 4(f) (waiving "his Constitutional, statutory and legal rights to appeal his plea, conviction and sentence" and "further agree[ing] not to contest his plea, conviction and sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. §§ 2255 or 2241 or otherwise, except for non-waivable claims"). In exchange, the Government agreed to recommend a two-level reduction[1] under USSG § 5K3.1 if Petitioner agreed to an early disposition of the case without a trial, any pretrial motions, or objections to the PSR and if he was sentenced on the same day he entered his plea. *Id.* ¶ 5(b). The Government also agreed to recommend that Petitioner be sentenced at the low end of the applicable Guidelines range. *Id.* ¶ 5(c).

The change-of-plea and sentencing hearing took place on May 2, 2016. ECF No. 16. The Court

---

[1] The provision provided that the Government agreed to recommend a four-level reduction in the adjusted offense level if Petitioner's criminal history category was less than VI and a two-level reduction if the criminal history category was VI. *Id.* ¶ 5(b). As discussed above, the PSR determined that the applicable criminal history category was VI. PSR at 12.

2

announced at the beginning of the hearing that it was not convinced that a two-level reduction was appropriate:

> I am not convinced I am going to be in agreement with this plea agreement.
>
> I am looking at a case where we have three prior drug offenses. We have prior deportations. We have a criminal record that is extensive.
>
> And it appears as though coming back and forth across the border and committing some serious crimes don't seem to bother Mr. Perez-Concepcion from what I'm seeing.
>
> And I'm not real sure why I would agree to a break here. Somebody is going to have to say something to convince me, because I'm not convinced.

ECF No. 35, Ex. B (May 2, 2016 Hr'g Tr.) at 2:15-25. The Government argued that because of the case's status as a "fast track case," it would recommend a two-level reduction in the offense level, pursuant to the terms of the plea agreement, resulting in a 41-months sentence, rather than the 51-month sentence without the two-level reduction. *Id*. at 3:1-8. The Court explained that because of the serious, and repeated, nature of the crimes, "if this were this go to trial and he were to be found guilty, I don't think he would be sentenced within the guideline range at all. He is looking at a maximum of 20 years' imprisonment. And from what I'm seeing, he doesn't get the idea that it is a big deal to cross the border without permission and then just come in and start committing crime again." *Id*. at 3:9-15. The Court further stated that the reason it was putting this on the record was because fairness required it: "if I see something . . . where I'm not inclined to follow the agreement, I tell them before they change their plea. I don't think that's fair, to just take their change of plea and then say, 'Well, I don't agree with it,' and then sentence them in a way that they totally didn't expect." *Id*. at 3:18-22.

Petitioner's trial counsel, Michael J. Aed, argued in favor of application of the two-point reduction, noting that Petitioner has young children who were born in the United States, had relatively short prior sentences, had an interest in quick resolution of the matter, and had been cooperative with law enforcement. *Id*. at 4:1-6:6. The Government added that Petitioner's "criminal history isn't necessarily that outrageous, considering the types of 1326 defendants that we see come through here. It is pretty common to have multiple drug trafficking offenses by this type of defendant that we see." *Id*.

at 7:2-6. The Government also noted that it "honors its current signed offer" with the "benefit of the two levels for the speedy disposition." *Id*. at 7:17-21. The Court stated that it was unmoved: "Just so you know, if this were to go forward with a change of plea, I would deny the 5K3.1 motion. I would still give him the low end of the guideline range, and he would be facing a substantial amount more than that if he got convicted of this with this background." *Id*. at 8:4-8. Petitioner's counsel conferred with Petitioner and stated that Petitioner wished to plead guilty even without the two-point reduction: "I have had a chance to discuss with him the Court's comments. At this point in time, I believe he wishes to proceed with a change of plea under the understanding that the Court would not give him the two-point fast track consideration and would indicate a sentence of 51 months. And I think in lieu of the totality of the circumstances and my recommendations, he is going to go ahead and proceed with the change of plea with that understanding." *Id*. at 8:22-9:4.

During the plea colloquy, Petitioner stated that he understood the exchange about the denial of the motion for a two-point reduction, *id*. at 9:8-19, that he understood that the maximum possible sentence was 20 years' imprisonment, *id*. at 10:13-17, and that he was waiving the right to appeal, *id*. at 10:18-20. The Court stated, "And I think you already know by now, I'm not obligated to follow the plea agreement. I have indicated that what I would give you is the low end of the guideline range, and I would be denying the government's motion. Do you understand?" Petitioner responded that he did. *Id*. at 12:11-15. The Court accepted the waiver of rights and found the change of plea to be knowing, intelligent, and voluntary. *Id*. at 13:25-14:2. The Court denied the motion for a two-point reduction and sentenced Petitioner to a term of 51 months' imprisonment. *Id*. at 15:2-8.

On January 23, 2017, Petitioner moved *pro se* under § 2255, arguing that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), invalidated the sentence imposed in this case; that his attorney rendered ineffective assistance of counsel for failing to argue that the Government breached the plea agreement; and that his attorney also rendered ineffective assistance of counsel for failing to file a notice of appeal after Petitioner had written him a letter specifically requesting that he do

4

so. ECF No. 19. The Court referred the matter to the Federal Defender's Office, ECF No. 20, and the attorney appointed to represent Petitioner, after "review of the record, pleadings and communications with petitioner and trial counsel," declined to file a supplement on Petitioner's behalf, ECF No. 27. On May 9, 2017, the Court granted the Government's request for an extension of time to file an opposition to the Petition, setting the opposition deadline for August 17, 2017, and setting the deadline for Petitioner to file a reply and to move for an evidentiary hearing for September 21, 2017. ECF No. 30. The Court later granted a second extension of time, moving the dates to September 18, 2017, for the Government's opposition; to October 18, 2017, for Petitioner's reply; and to October 27, 2017, to move for an evidentiary hearing. ECF No. 34. The Government opposed the Petition on October 16, 2017, including as an attachment a declaration from Petitioner's counsel stating that he did not have any further direct or indirect communication with Petitioner after the sentencing hearing until contacted by Petitioner's appellate counsel in March of 2017. ECF No. 35. The Court thereafter re-set the remaining deadlines, ordering Petitioner to file a reply to the opposition by November 20, 2017, and setting November 29, 2017, as the deadline to move for an evidentiary hearing. ECF No. 36 at 2.

Petitioner filed neither a reply to the Government's opposition nor a motion for an evidentiary hearing.

### III. **STANDARD OF DECISION**

**A.    Section 2255**

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a movant must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence

on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

"Where a section 2255 motion is based on alleged occurrences outside the record, no hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) (internal citations and quotations omitted). While a hearing may be required "[w]here section 2255 motions have been based on alleged occurrences outside the record," no hearing is required if "the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record." *Id.* Ultimately, "Section 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for presentation of the relevant facts." *Id.* at 1159 (internal citations and quotations omitted).

**B.** <u>**Ineffective Assistance Of Counsel**</u>

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). To establish that the assistance of counsel was so ineffective as to constitute a constitutional violation under § 2255, a petitioner must demonstrate both a deficient performance by counsel and that the performance was prejudicial to the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005). To show deficient performance of counsel, the petitioner must demonstrate that his attorney "made errors that a reasonably competent attorney acting as a diligent and conscientious advocate would not have made." *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985). To show prejudice, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Generally, an express waiver of the right to file a §2255 petition bars a defendant from moving the sentencing court to vacate, set aside, or correct the sentence. *See United States v. Abarca*, 985 F.2d

6

1012, 1014 (9th Cir. 1993). "A defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." *United States v. Watson*, 582 F.2d 974, 986 (9th Cir. 2009).

Ineffective assistance of counsel may, however constitute a basis for a motion under § 2255 when a defendant asserts that his counsel failed to negotiate a plea agreement. A waiver is unenforceable with respect to a challenge to the voluntariness on the waiver. This is because the ineffective assistance of counsel claim cannot be barred by an agreement that was produced by ineffective representation. *Washington v. Lampert*, 422 F.3d 864, (9th Cir. 2005) (holding that a waiver is unenforceable with regard to an ineffective assistance of counsel argument in a federal habeas petition brought under 28 U.S.C. § 2254). A waiver accepted in reliance on delinquent representation would deprive a petitioner of the opportunity to assert his Sixth Amendment right to effective assistance of counsel. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) (quoted with approval by *Washington*, 422 F.3d at 871).

## IV. DISCUSSION

Petitioner makes three arguments in support of his claim that he merits habeas relief. First, he argues that the Supreme Court's decision in *Johnson* invalidated the sentence he received in this case. Second, he claims that his attorney rendered ineffective assistance of counsel for failing to argue that the Government breached the plea agreement. Finally, he argues that his counsel further rendered ineffective assistance of counsel for failure to file a notice of appeal after Petitioner asked him to do so via a letter.

The Government argues that Petitioner has waived or procedurally defaulted his claims, apart from his alleged ineffective assistance of counsel as to the voluntariness of the plea and the waiver of his appellate rights. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998)

(citations and internal quotation marks omitted). Claims of ineffective assistance of counsel generally fall outside the ambit of procedural default and are properly brought in habeas petitions. *Massaro v. United States*, 538 U.S. 500, 504–06 (2003). *See also United States v. James*, 494 F. App'x 745, 748 (9th Cir. 2012) ("Rather, in most instances, claims of ineffective assistance of counsel should be raised first in collateral proceedings in the district court under 28 U.S.C. § 2255."); *United States v. McGowan*, 668 F.3d 601, 605 (9th Cir. 2012) ("As a 'general rule,' we 'do not review challenges to the effectiveness of defense counsel on direct appeal.'" (quoting *United States v. Moreland*, 622 F.3d 1147, 1157 (9th Cir. 2010))). Accordingly, Petitioner's claims for ineffective assistance of counsel, which involve his plea and his attorney's purported failure to file a notice of appeal, are considered below.

As further discussed below, because the Court finds that Petitioner's argument that his sentence was undermined by *Johnson* fails on the merits, the Court declines to address the Government's arguments that his collateral attack is procedurally defaulted and barred by the waiver provision of his plea agreement.

**A.      Invalidation Of Sentence Based On *Johnson* And *Welch***

Pursuant to the Armed Career Criminal Act, a defendant must be sentenced to a mandatory minimum of 15 years to life in prison if he or she has three prior convictions for "a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). The ACCA defines a "violent felony" as one which is punishable by imprisonment for a term exceeding one year, and that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is a burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis supplied). Courts generally refer to § 924(e)(2)(B)(i) as the "elements clause," the first part of the disjunctive statement in (ii) as the "enumerated offenses clause," and the remainder, starting with "or otherwise," as the "residual clause." *Johnson*, 135 S. Ct. at 2556-57, 2563; *United States v. Lee*, 821 F.3d 1124, 1126 (9th Cir. 2016).

8

In *Johnson*, the Supreme Court held that "imposing an increased sentence under the residual clause of the ACCA violates the Constitution's guarantee of due process," on the basis that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." 135 S. Ct. at 2557, 2563. "Two features of the residual clause conspire to make it unconstitutionally vague." *Id.* at 2557. First, "the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime" by "t[ying] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Second, "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* at 2558.

The Supreme Court subsequently held in *Welch* that its decision in *Johnson II* announced a new substantive rule that applies retroactively to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). "By striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of the [ACCA], altering 'the range of conduct or the class of persons that the Act punishes.'" *Id.* at 1265 (brackets omitted) (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)). As a result, defendants sentenced pursuant to the ACCA residual clause can collaterally attack their sentences as unconstitutional under § 2255. *See, e.g.*, *United States v. Heflin*, 195 F. Supp. 3d 1134, 1137 (E.D. Cal. 2016).

Petitioner argues that his "sentence was increased by a guidelines provision that is indistinguishable from the residual clause. [T]herefore, the ruling in *Johnson* applies." ECF No. 19 at 5. Petitioner's argument fails.

First, the provision of the Sentencing Guidelines that Petitioner argues is unconstitutionally vague does not contain a residual clause. Petitioner's offense level was calculated pursuant to the 2015 USSG. PSR at 4. His base offense level for violation of 8 U.S.C. § 1326(a) was determined under this

section to be eight. USSG § 2L1.2(a). The PSR then determined that because of Petitioner's prior conviction for a felony drug trafficking offense in Los Angeles County Superior Court on June 20, 2006, for which he received a sentence of three years' probation and which added one point to his criminal history determination under the Guidelines, the Sentencing Guidelines provided for a 12-level enhancement. PSR at 4. That provision of the Sentencing Guidelines provides: "a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels if the conviction receives criminal history points under Chapter Four or by 8 levels if the conviction does not receive criminal history points." USSG § 2L1.2(b)(1)(B). This provision of the Guidelines contains no residual clause.

Second, the Supreme Court explained in *Beckles v. United States* that criminal laws that the Court has invalidated under the void-for-vagueness doctrine are "laws that *define* criminal offenses and laws that *fix the permissible sentences* for criminal offenses." 137 S. Ct. 886, 892, (2017). Because "the advisory Guidelines do not fix the permissible range of sentences" but instead "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range," they "are not subject to a vagueness challenge under the Due Process Clause." *Id*. Accordingly, *Beckles* forecloses Petitioner's argument that the provision of the Sentencing Guidelines under which he was sentenced was unconstitutionally vague.

Accordingly, *Johnson*'s invalidation of the residual clause of the ACCA has no bearing on this case, and Petitioner's argument fails.

**B.      Ineffective Assistance of Counsel For Failure To Argue Breach Of Plea Agreement**

Petitioner argues that his attorney rendered ineffective assistance because he failed to argue that the Government breached the plea agreement since Petitioner did not get a two-point reduction for participation in the fast-track program.

The plea agreement makes clear that the sentencing court is "neither a party to nor bound by" the plea agreement and that sentencing is a "matter solely within the discretion of the Court." Plea

Agreement ¶ 12(a). It goes on to state that the Court is under no obligation to accept any recommendation at the Government may make and that it may in its discretion impose "any sentence it deems appropriate up to and including the statutory maximum set forth in Section 7" of the agreement. *Id*. (citing *id*. ¶ 7(a) (setting forth maximum term of imprisonment of 20 years)).

At the sentencing hearing, the Government argued, consistent with the terms of the plea agreement, that that the Court should provide the benefit of the two-level reduction pursuant to USSG § 5K3.1 and impose a sentence of 41 months' imprisonment, a term at the low end of the applicable Guidelines range. May 2, 2016 Hr'g Tr. at 3:1-8. When the Court announced that it was not convinced that Petitioner warranted a two-level reduction, based on his extensive criminal history, the Government argued that Petitioner's "criminal conduct and his criminal history isn't necessarily that outrageous, considering the types of 1326 defendants that we see come through here" and that the Government continued to "honor[] its current signed offer." *Id*. at 6:25-7:4, 7:17-21. Petitioner's counsel also argued that the Court should impose a 41-month sentence, based on the terms of the plea agreement. *Id*. at 4:1-6:6.

The Court informed the parties that "if this were to go forward with a change of plea, I would deny the 5K3.1 motion. I would still give him the low end of the guideline range." *Id*. at 8:4-6. With this information, the Court permitted Petitioner's counsel to discuss the matter with his client. *Id*. at 8:12-14. After conferring with Petitioner, Petitioner's counsel stated

> I have had a chance to discuss with him the Court's comments. At this point in time, I believe he wishes to proceed with a change of plea under the understanding that the Court would not give him the two-point fast track consideration and would indicate a sentence of 51 months.
>
> And I think in lieu of the totality of the circumstances and my recommendations, he is going to go ahead and proceed with the change of plea with that understanding.

*Id*. at 8:22-9:4. During the change-of-plea colloquy with the Court, Petitioner confirmed that he heard and understood what his attorney said and that he had no questions about it. The Court asked, "Do you understand what I said and what I was saying about why I would not grant the

11

government's motion?" Petitioner replied, "Yes." He also denied having any questions about the matter. *Id*. at 9:15-19. Petitioner's counsel's declaration explains that his independent review of the record led him to calculate an offense level of 17, with a criminal history category of VI, for a sentencing range of 51 to 63 months. A two-point reduction under USSG § 5K3.1 would result in an adjusted offense level of 15, with a Guidelines range of 41 to 51 months. Even after the Court expressed that it would impose a 51-month sentence, counsel stated that he recommended that Petitioner accept the plea agreement, since the 51 months was within the Guidelines range even if the motion leading to the two-point reduction had been granted. ECF No. 35, Ex. C, Declaration of Michael J. Aed ("Aed Decl."), ¶ 8.

In short, Petitioner's claim is without merit. The Government did not breach the plea agreement, but instead argued for the two-point fast-track reduction pursuant to USSG § 5K3.1, as it agreed it would in the plea agreement. Petitioner's counsel argued that the Court should grant the motion for the fast-track reduction. When the Court stated that it would deny the motion and impose a 51-month sentence, Petitioner conferred with his counsel and then entered a plea of guilty with the knowledge that he would be sentenced to a 51-month term of imprisonment. Petitioner has not demonstrated that his counsel acted deficiently, as Petitioner's assertions are contradicted by the in-court plea colloquy. Nor has he demonstrated that even if his counsel acted deficiently, he suffered prejudice as a result. Petitioner did not receive ineffective assistance of counsel for his attorney's failure to make the meritless argument that the Government breached the plea agreement.

**C.** **Ineffective Assistance of Counsel For Failure To File A Notice Of Appeal**

Petitioner's final argument is that his attorney failed to file a notice of appeal, even though Petitioner "specifically instructed counsel to do so" by a letter dated May 5, 2016. ECF No. 19 at 5.

Whether a defendant who knowingly and voluntarily waived both the right to appeal and the right to collaterally attack the conviction and sentence can succeed in claiming in a habeas petition that

12

his counsel was ineffective for failing timely to file a notice of appeal is the subject of in intra-circuit split. *See, e.g., United States v. Flanders*, No. 2:12-cr-363 TLN EFB P, 2018 WL 3135466, at *2 (E.D. Cal. June 27, 2018) (This "question is an open one in the Ninth Circuit."); *United States v. Taggart*, No. 2:11-CR-0140 MCE KJN, 2014 WL 3867431, at *4 (E.D. Cal. Aug. 6, 2014) (same) (collecting cases), *report and recommendation adopted*, No. 2:11-cr-0140 MCE KJN P, 2017 WL 65260 (E.D. Cal. Jan. 6, 2017).

The Supreme Court reaffirmed in *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." The Ninth Circuit applied this principle to the context of a habeas petition filed by a criminal defendant whose attorney ignored the defendant's request to enter an appeal following a guilty plea that included a valid waiver of the right to appeal in *United States v. Sandoval–Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005). The panel held that an attorney's failure to follow his client's request to file a notice of appeal, even in the face of a valid waiver in the plea agreement to the right to appeal and with the likelihood that an appeal would result in greater punishment for the defendant than if he were to abide by the terms of the plea agreement and forego an appeal, satisfies both the deficient-performance and prejudice prongs of *Strickland* and is therefore *per se* ineffective assistance of counsel, regardless of the merit of the appeal. Counterintuitive though this may be, it results because the defendant has suffered deficient performance from the attorney's failure to carry out his instructions to appeal, and resulting prejudice from his lost *opportunity* to file the appeal, "not that he lost a favorable result that he would have obtained by appeal." *Id*. A petitioner succeeding in demonstrating ineffective assistance of counsel on this claim enjoys limited relief: the sole remedy is to "allow[] the appeal to proceed."[2] *Sandoval-Lopez*, 409 F.3d at 1198.

---

[2] This is done by the district court's vacating and reentering the judgment, to allow the defendant to file a timely notice of appeal. The court in *Sandoval-Lopez* closed by noting that "[i]t may be very foolish to risk losing [the benefit of a] plea bargain on an appeal almost sure to go nowhere . . . . Nevertheless the client has the constitutional right . . . to bet on the possibility of winning the appeal and then winning an acquittal, just as a poker player has the right to hold the ten and queen

13

The plea agreement in *Sandoval-Lopez* included a waiver of direct appellate rights but did not discuss a waiver of the right to collateral attack,[3] and the issue was presented to the Ninth Circuit on a habeas petition. Whether the same result occurs when a valid plea agreement includes a waiver of both the right to file a direct appeal and to file a collateral attack is a question that the Ninth Circuit has not yet had cause to answer. This Court has examined the issue and held that a defendant may waive such a claim but that "the scope of the waiver is limited to the express terms of the plea agreement." *United States v. Crisp*, No. 1:11-CR-00026-LJO, 2016 WL 235202, at *3 (E.D. Cal. Jan. 20, 2016). In *Crisp* the Court held that the waiver, which covered "issues regarding [defendant's] conviction, restitution imposed, forfeiture order and sentence" did not reach the defendant's request to file an appeal.[4] *Id*. The Court similarly held in *Schneider v. United States*, No. 1:10-CR-00361-LJO, 2012 WL 5522703, at *4 (E.D. Cal. Nov. 14, 2012), that a claim for ineffective assistance of counsel rooted in a failure to file a notice of appeal fell beyond the scope of a waiver providing that "[t]he defendant . . . agrees not to contest her plea, conviction, restitution imposed or sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255 or § 2241." The Court concluded that "Ms. Schneider's claim that she received ineffective assistance of counsel when counsel ignored her request to file an appeal exceeds the scope of the waiver because it does not constitute a challenge to the plea, conviction, restitution imposed, or sentence. Rather, the claim challenges Ms. Schneider's inability to file an appeal" and was not barred by the waiver in the plea agreement. *Id*. *See also United States v. Valenzuela*, No. 1:14-CR-00188-LJO, 2018 WL 3854162, at *8-9 (E.D. Cal. Aug. 10, 2018)

---

of hearts, discard three aces, and pray that when he draws three cards, he gets a royal flush." *Id*. at 1199.

[3] Though not quoted in the Ninth Circuit opinion, the relevant language of the plea agreement provided that "[t]he Defendant agrees not to appeal his convictions and any sentences imposed in accordance with this plea agreement." *United States v. Sandoval-Lopez*, No. 00-cr-2083-RHW (E.D. Wash. Jan. 11, 2001), ECF No. 94, Plea Agreement, ¶ 8.

[4] The provision provided that "[t]he defendant knowingly and voluntarily waives his Constitutional and statutory rights to appeal his plea, conviction and sentence. This waiver of appeal includes, but is not limited to, an express waiver of the defendant's right to appeal his plea, conviction, restitution imposed, forfeiture order and sentence on any ground . . . , and the defendant further agrees not to contest his plea, conviction, restitution imposed, forfeiture order and sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. § 2255." *United States v. Crisp*, No. 1:11-CR-00026-LJO, ECF No. 278 ¶ 4(e).

(same, where plea agreement provided that the petitioner "'waive[d] his right to challenge his conviction, sentence or the manner in which it was determined' in any post-conviction attack").

In the plea agreement here, Petitioner waived "his Constitutional, statutory and legal rights to appeal his plea, conviction and sentence." Plea Agreement ¶ 4(f). He "further agree[d] not to contest his plea, conviction and sentence in any post-conviction proceeding, including but not limited to a proceeding under 28 U.S.C. §§ 2255 or 2241 or otherwise, except for non-waivable claims." *Id*. Though the wording differs from the waivers in *Crisp, Schneider*, and *Valenzuela*, the Court finds that the substance is the same and that Petitioner's claim for his lost opportunity to file a notice of appeal falls outside the scope of the waiver.

If Petitioner explicitly told his lawyer to file a notice of appeal and he did not, it was deficient performance and Petitioner was prejudiced. *Sandoval-Lopez*, 409 F.3d at 1197. This is true even where, as here, the plea agreement includes a waiver of appellate rights. *Id*.

For the reasons discussed below, the Court finds that Petitioner did not request his lawyer to file a notice of appeal in this matter and makes this factual finding based on the record before it. If a determination is required on a factual issue in a habeas proceeding, "district courts may make factual findings based on oral testimony, evidence in the record, or a combination of the two." *United States v. Del Toro*, No. 12-CR-00670-LHK, 2017 WL 1540788, at *7 (N.D. Cal. Apr. 28, 2017) (citing *Crittenden v. Chappell*, 804 F.3d 998, 1006–07 (9th Cir. 2015) (permitting clear error review of district court's factual findings in a habeas proceeding based "solely on a cold record, rather than testimony before the district judge" (citing Fed. R. Civ. P. 52(a)(6)))).

As discussed above, Petitioner signed a plea agreement waiving "his Constitutional, statutory and legal rights to appeal his plea, conviction and sentence." Plea Agreement ¶ 4(f). During the change-of-plea colloquy, Petitioner again acknowledged that he was giving up appellate rights in this matter. May 2, 2016 Hr'g Tr. at 10:18-20 ("Q. And do you understand that you are waiving your right to appeal? A. Yes."). At the same hearing, the Court advised Petitioner that the maximum possible

15

sentence was 20 years' imprisonment. *Id*. at 10:13-17. The Court additionally commented that "if this were this go to trial and he were to be found guilty, I don't think he would be sentenced within the guideline range at all. He is looking at a maximum of 20 years' imprisonment. And from what I'm seeing, he doesn't get the idea that it is a big deal to cross the border without permission and then just come in and start committing crime[s] again." *Id*. at 3:9-15. After being told that the Court would not grant the motion for a two-point reduction and would impose a sentence of 51 months, Petitioner conferred with his attorney and decided to enter a guilty plea.

Petitioner now claims that he asked his attorney to file a notice of appeal, in spite of the waiver of the right to appeal in the plea agreement, his verbal statements during the plea colloquy affirming the waiver of the right to appeal, and the significant benefit of getting a low-Guidelines sentence of 51 months when faced with the risk of an above-Guidelines sentence if he were to proceed to trial. The sole support for Petitioner's claim that he asked his attorney to file a notice of appeal is the brief paragraph in his moving petition asserting as much. Since then, Petitioner has done nothing to support this claim. He did not file a reply in support of his Petition, did not submit an affidavit further explaining his purported request to file a notice of appeal, and failed to move for an evidentiary hearing, despite repeated opportunities to do so. *See* ECF Nos. 30, 34, 37 (scheduling orders).

By contrast, Petitioner's trial counsel submitted a declaration testifying that Petitioner sent him no such letter requesting that he file a notice of appeal. Mr. Aed testified via declaration, "Subsequent to the plea agreement and sentencing, I did not have any further direct communication with Mr. Lopez Perez-Concepcion, either in person, in writing, or through 3rd parties, until March 2, 2017 when I was contacted via electronic mail by his appellate counsel, Carolyn Phillips." Aed Decl. ¶ 9. Mr. Aed concluded, "Review of my notes and file documents[] do not reflect any requests by Mr. Lopez Perez-Concepcion directly, or through 3rd parties, to file a notice of appeal on his behalf." *Id*.

The Court finds that Petitioner's trial counsel's statements are credible and that Petitioner's bare statement in his Petition is not credible. Petitioner waived his right to appeal in the plea agreement;

orally affirmed that he was waiving the right to appeal during the plea colloquy; received a benefit by way of a Guidelines sentence, when the Court warned him that if he proceeded to trial and were found guilty, he would receive an above-Guidelines sentence based on his criminal history; and was told exactly what sentence he would get, conferred with his attorney, and decided to enter a guilty plea, after which he received the sentence the Court told him he would receive. Under these circumstances, Petitioner's claim is not credible. "Petitioner's consistent waiver of his right to appeal belies his claim that he asked his trial counsel to appeal. In contrast, Petitioner's trial counsel's statement that Petitioner made no request for an appeal is consistent with Petitioner's statements, actions, and the benefits he received by giving up his right to appeal." *Del Toro*, 2017 WL 1540788, at *10.

Accordingly, the Court finds that Petitioner did not request that his counsel file a notice of appeal, and Petitioner's claim for ineffective assistance of counsel for failure to file a notice of appeal therefore fails.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken from the denial of a § 2255 motion unless a certificate of appealability is issued. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To obtain a certificate of appealability, Petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (internal quotation marks and citations omitted).

Because Petitioner has failed to make a showing that he was denied a constitutional right, the Court **DECLINES** to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## VI. CONCLUSION AND ORDER

Petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is

**DENIED**. The Court declines to issue a certificate of appealability for this motion.

IT IS SO ORDERED.

    Dated: __**September 25, 2018**__            __**/s/ Lawrence J. O'Neill**__
                                                    UNITED STATES CHIEF DISTRICT JUDGE